UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

THE GUARANTEE COMPANY OF
NORTH AMERICA USA, a foreign
corporation,

      Plaintiff,

v.

MIK, LLC, a Florida limited liability
company, DAGEN ENTERPRISES, LLC,
a Florida limited liability company,
and KIM A. DAGEN, individually,

      Defendants.

_____/

**COMPLAINT FOR DAMAGES**

      Plaintiff, THE GUARANTEE COMPANY OF NORTH AMERICA USA, by and through

its undersigned counsel, hereby sues the Defendants, MIK, LLC, DAGEN ENTERPRISES, LLC,

and KIM A. DAGEN, and states as follows:

**JURISDICTION AND VENUE**

      1.     This is an action for damages in excess of Seventy-Five Thousand and 00/100

Dollars ($75,000.00), exclusive of interest, fees and costs, and this Court otherwise has jurisdiction

over the subject matter hereof.

      2.     Subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1), diversity of

citizenship.   The parties are citizens of different states and the amount in controversy exceeds the

jurisdictional limits of this Court.

      3.     Plaintiff, THE GUARANTEE COMPANY OF NORTH AMERICA USA

("GCNA"), is a corporation organized and existing under the laws of the State of Michigan, whose

CASE NO.: _____

principal place of business is located in Southfield, Michigan, and which is registered with and authorized to do business in the State of Florida.   GCNA is a citizen of the state of Michigan.

4.      Defendant, MIK, LLC ("MIK"), is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Davie, Broward County, Florida. MIK is a citizen of the state of Florida.

5.      Defendant, DAGEN ENTERPRISES, LLC ("ENTERPRISES"), is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Davie, Broward County, Florida. ENTERPRISES is a citizen of the state of Florida.

6.      Defendant, KIM A. DAGEN ("K.DAGEN"), is a citizen of the State of Florida who resides in Davie, Broward County, Florida, and who is otherwise *sui juris*.   K.DAGEN is a citizen of the state of Florida.

7.      Venue is proper in this Court because it is the situs where the legal obligation arose, where the corporate Defendant conducted business which gives rise to the instant claims, and where the individual Defendants reside.

8.      All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## **GENERAL ALLEGATIONS**

### **A.     KAST – One St. Petersburg**

9.      On or about April 29, 2016, KAST Construction III, LLC ("KAST"), as general contractor, and MIK, as subcontractor, entered into a written contract (the "*One St. Pete Contract*") for the performance of certain work on the project commonly known as the "Concrete Masonry Unit – One St. Petersburg" (the "One St. Pete Project").

CASE NO.: _____

10.     On or about January 13, 2017, GCNA, as surety, issued a separate *Performance Bond* and *Labor and Material Payment Bond* each bearing bond no. FS80131954 (the "*One St. Pete Bonds*") on behalf of MIK, as principal, with KAST, as obligee, in connection with MIK's performance of the *One St. Pete Contract*.   True and correct copies of the *One St. Pete Bonds* are attached hereto as **Composite Exhibit "A"**.

11.     Disputes arose between KAST and MIK under the *One St. Pete Contract*, resulting in KAST's assertion of claims against MIK and GCNA under the *One St. Pete Contract* and *One St. Pete Performance Bond*.

12.     In addition to KAST's claims, numerous subcontractors, suppliers and other entities have filed claims against MIK and GCNA under the *One St. Pete Labor and Material Payment Bond*.

**B.      KAST – Hyatt Hotel**

13.     On or about June 21, 2016, KAST, as general contractor, and MIK, as subcontractor, entered into a written contract (the "*Hyatt Hotel Contract*") for the performance of certain work on the project commonly known as the "Hyatt Place, St. Petersburg, Florida" (the "Hyatt Hotel Project").

14.     On or about August 11, 2016, GCNA, as surety, issued a separate *Performance Bond* and *Labor and Material Payment Bond* each bearing bond no. FS80131953 (the "*Hyatt Hotel Bonds*") on behalf of MIK, as principal, with KAST, as obligee, in connection with MIK's performance of the *Hyatt Hotel Contract*.   True and correct copies of the *Hyatt Hotel Bonds* are attached hereto as **Composite Exhibit "B"**.

15.     Disputes arose between KAST and MIK under the *Hyatt Hotel Contract*, resulting in KAST's assertion of claims against MIK and GCNA under the *Hyatt Hotel Contract* and *Hyatt Hotel Performance Bond*.

16.     In addition to KAST's claims, numerous subcontractors, suppliers and other entities have filed claims against MIK and GCNA under the *Hyatt Hotel Labor and Material Payment Bond*.

### C.     Hunt – Ballpark of the Palm Beaches

17.     On or about January 5, 2016, Hunt Construction Group, Inc. ("Hunt"), as general contractor, and MIK, as subcontractor, entered into a written contract (the "*Ballpark Contract*") for the performance of certain work on the project commonly known as the "Ballpark of the Palm Beaches" (the "Ballpark Project").

18.     On or about March 7, 2016, GCNA, as surety, issued a separate *Subcontract Performance Bond* and *Subcontract Payment Bond* each bearing bond no. FS80118320 (the "*Ballpark Bonds*") on behalf of MIK, as principal, with Hunt, as obligee, in connection with MIK's performance of the *Ballpark Contract*.   True and correct copies of the *Ballpark Bonds* are attached hereto as **Composite Exhibit "C"**.

19.     Disputes arose between Hunt and MIK under the *Ballpark Contract*, resulting in Hunt's assertion of claims against MIK and GCNA under the *Ballpark Contract* and *Ballpark Subcontract Performance Bond*.

20.     In addition to Hunt's claims, numerous subcontractors, suppliers and other entities have filed claims against MIK and GCNA under the *Ballpark Subcontract Payment Bond*.

### D.     Hunt – Dolphins Stadium

21.     On or about January 11, 2017, Hunt, as general contractor, and MIK, as subcontractor, entered into a written contract (the "*Dolphins Stadium Contract*") for the performance of certain work on the project commonly known as the "Miami Dolphins Stadium Renovations" (the "Dolphins Stadium Project").

Case 0:18-cv-60825-UU   Document 1   Entered on FLSD Docket 04/13/2018   Page 5 of 19

CASE NO.: _____

22.     On or about January 20, 2017, GCNA, as surety, issued a separate *Subcontract Performance Bond* and *Subcontract Payment Bond* each bearing bond no. FS80131967 (the "*Dolphins Stadium Bonds*") on behalf of MIK, as principal, with Hunt, as obligee, in connection with MIK's performance of the *Dolphins Stadium Contract*.  True and correct copies of the *Dolphins Stadium Bonds* are attached hereto as **Composite Exhibit "D"**.

23.     Disputes arose between Hunt and MIK under the *Dolphins Stadium Contract*, resulting in Hunt's assertion of claims against MIK and GCNA under the *Dolphins Stadium Contract* and *Dolphins Stadium Subcontract Performance Bond*.

24.     In addition to Hunt's claims, numerous subcontractors, suppliers and other entities have filed claims against MIK and GCNA under the *Dolphins Stadium Subcontract Payment Bond*.

**E.     Straticon – 353 Sunset Drive**

25.     On or about May 12, 2016, Straticon, LLC ("Straticon"), as general contractor, and MIK, as subcontractor, entered into a written contract (the "*353 Sunset Contract*") for the performance of certain work on the project commonly known as the "353 Sunset Drive – Concrete and Masonry Package" (the "353 Sunset Project").

26.     On or about September 15, 2016, GCNA, as surety, issued a separate *Performance Bond* and *Payment Bond* each bearing bond no. FS80131959 (the "*353 Sunset Bonds*") on behalf of MIK, as principal, with Straticon, as obligee, in connection with MIK's performance of the *353 Sunset Contract*.  True and correct copies of the *353 Sunset Bonds* are attached hereto as **Composite Exhibit "E"**.

27.     Disputes arose between Straticon and MIK under the *353 Sunset Contract*, resulting in Straticon's assertion of claims against MIK and GCNA under the *353 Sunset Contract* and *353 Sunset Performance Bond*.

-5-

CASE NO.: _____

28.      In addition to Straticon's claims, numerous subcontractors, suppliers and other entities have filed claims against MIK and GCNA under the *353 Sunset Payment Bond*.

**F.      Prime Homebuilders – One Daytona**

29.      On or about June 16, 2016, Prime Homebuilders, as general contractor, and MIK, as subcontractor, entered into a written contract (the "*One Daytona Contract*") for the performance of certain work on the project commonly known as the "One Daytona Fairfield Inn & Suites" (the "One Daytona Project").

30.      On or about October 27, 2016, GCNA, as surety, issued a separate *Performance Bond* and *Labor and Material Payment Bond* each bearing bond no. FS80131956 (the "*One Daytona Bonds*") on behalf of MIK, as principal, with Prime Homebuilders, as obligee, in connection with MIK's performance of the *One Daytona Contract*.   True and correct copies of the *One Daytona Bonds* are attached hereto as **Composite Exhibit "F"**.

31.      One subcontractor to MIK, Crom Equipment Rentals, LLC ("Crom Equipment"), has filed suit against MIK and GCNA under the *One Daytona Payment Bond* in the action styled *Crom Equipment Rentals, LLC v. Excelis Hospitality Construction, LLC et al*, Volusia County Circuit Court Case No. 2017-30696-CICI.

**G.      The Pending Claims against the *Bonds*.**

32.      As a result of the foregoing claims, GCNA has engaged the undersigned counsel – as well as the services of JSHeld, LLC ("JSHeld"), as construction consultant – to assist in GCNA's investigation and evaluation of its rights and obligations, if any, under the *One St. Pete Bonds*, *Hyatt Hotel Bonds*, *Ballpark Bonds, Dolphins Stadium Bonds*, *353 Sunset Bonds* and *One Daytona Bonds* (collectively, the "*Bonds*").

CASE NO.: _____

33.     As of April 1, 2018, GCNA has incurred direct losses and expenses in resolving claims against the *Bonds* in the amount of Eight Hundred Forty-Three Eight Hundred Sixty-Three and 44/100 Dollars ($843,863,44).

34.     GCNA remains exposed to direct liability under the *Bonds*, as well as additional exposure for loss adjustment expenses in connection with its investigation, defense and/or resolution of the various pending and/or future claims.

**H.     *Indemnity Agreement***

35.     As a condition precedent to issuing the *Bonds*, each of MICHAEL S. DAGEN[1] and MIK, ENTERPRISES and K.DAGEN (collectively, the "INDEMNITORS"), individually, jointly and severally executed a *General Agreement of Indemnity* dated March 4, 2016 (the "*Indemnity Agreement*").   A true and correct copy of the *Indemnity Agreement* is attached hereto as **Exhibit "G"**.

36.     Pursuant to the section of the *Indemnity Agreement* entitled "INDEMNITY TO SURETY", each of the INDEMNITORS, jointly and severally, agreed to exonerate, indemnify and hold GCNA harmless from and against any and all losses and/or expenses incurred in connection with GCNA's issuance of the *Bonds*:

> ***Indemnitors agree to pay Surety upon demand***:
>
> 1.  ***All loss, costs and expenses of whatsoever kind and nature***, ***including court costs, attorney fees*** (whether Surety at its sole option elects to employ its own attorneys, or permits or requires Indemnitors to make arrangements for Surety's legal representation), ***in-house fees, consultant fees, investigative costs and any other losses, costs or expenses*** incurred by Surety by reason of:

---

[1] Although an Indemnitor under the *General Agreement of Indemnity,* MICHAEL S. DAGEN filed for the protections of the United States Bankruptcy Code prior to the filing of the instant action and, as such, is not named herein.

CASE NO.: _____

    a.   ***Surety having executed, provided or procured any Bond***;

    b.   ***any Default under this Agreement*** by any of the Indemnitors;

    c.   Surety ***enforcing any of the covenants or conditions of this Agreement***;

    d.   Surety ***conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss*** or unpaid premium in connection with any Bond; and/or

    e.   Surety ***prosecuting or defending any action or claim in connection with any Bonds*** executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation.   In addition, the ***Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement***.   (Emphasis added)

37.   Pursuant to the section of the *Indemnity Agreement* entitled "INDEMNITY TO SURETY", each of the INDEMNITORS, further jointly and severally, agreed to collateralize GCNA against any actual and/or potential claims, losses and expenses incurred as a result of GCNA's issuance of the *Bonds*:

    ***Indemnitors agree to pay Surety upon demand***:

    2.   ***Any amount sufficient to discharge any claim made against Surety on any bond***, whether Surety will have made any payment or established any reserve therefore.   ***Such payment shall be equal*** to the larger of: (a) the amount of any reserve set by the Surety, or (b) ***such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss***.   This sum may be used by Surety to pay such claims or be held by Surety as collateral security against loss on any Bond.… ***The Indemnitors acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law.   The Indemnitors confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision***. (Emphasis added)

CASE NO.: _____

38. Pursuant to the section of the *Indemnity Agreement* entitled "GENERAL PROVISIONS", each of the INDEMNITORS, jointly and severally, agreed to exonerate (or if not possible, collateralize) GCNA against any claims, losses and expenses incurred as a result of GCNA's issuance of the *Bonds*:

> ***The Indemnitors will***, on request of Surety, ***procure the discharge of Surety from any Bond and all liability by reason thereof***.   If such discharge is unattainable, the Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations. (Emphasis added)

39. Pursuant to the section of the *Indemnity Agreement* entitled "CLAIMS AGAINST THE SURETY", the INDEMNITORS, jointly and severally, agreed that GCNA shall have the sole and absolute authority to resolve any claims against the *Bonds*, and that documentation supporting any payments by GCNA would be conclusive evidence of the INDEMNITORS' outstanding liability and obligation:

> With respect to claims against Surety, ***Indemnitors agree that***:
>
> 1. ***Surety shall have the exclusive right for itself and the Indemnitors*** to determine in its ***sole and absolute discretion*** whether any claim or suit upon any bond ***shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed***.
>
> 2. ***Surety may incur such expenses, including attorneys' fees as deemed necessary or advisable*** in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.
>
> 3. In the event of any payment of any kind by the Surety, the Indemnitors further agree that ***the liability of the Indemnitors shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that***:
>
>     a. any Principal or ***Indemnitor is or has been in default*** under or pursuant to this Agreement;
>
>     b. the ***Surety was or might be liable to pay the claims asserted or the sums paid***, whether or not such liability actually exists; or

c.   such ***payments were or are necessary or expedient, in the Surety's sole and absolute discretion***, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed.

4.   An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be ***prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit against Indemnitors***.   (Emphasis added)

40.     By e-mail communication dated November 15, 2017, MIK formally requested certain financial accommodations and/or other assistance from GCNA for the purpose of completing the work required on one or more of the One St. Pete Project, Hyatt Hotel Project, Ballpark Project, Dolphins Stadium Project, 353 Sunset Project and/or One Daytona Project (collectively, the "Projects").

41.     As part of its ongoing communications with the INDEMNITORS, GCNA has made demand thereupon for indemnification, exoneration and collateralization under the *Indemnity Agreement*.

42.     To date, the INDEMNITORS have failed and/or refused to fulfill their contractual and common-law indemnity, exoneration and collateralization obligations to GCNA.

43.     GCNA continues to incur additional expenses (including but not limited to expenses associated with its attorneys) in connection with the prosecution of the instant action.

44.     GCNA has retained the services of the undersigned counsel to represent its interests in this matter, and is required to pay a reasonable fee for such services.

45.     Pursuant to the terms of the *Indemnity Agreements*, the INDEMNITORS agreed to be liable for, and agreed that GCNA was entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of the instant action.

-10-

CASE NO.: _____

## COUNT I - SPECIFIC PERFORMANCE / INJUNCTIVE RELIEF
## FOR COLLATERAL (AGAINST INDEMNITORS)

46.     GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

47.     This is an action for specific performance seeking equitable relief.

48.     There exists a valid and fully enforceable contract between GCNA and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

49.     GCNA has fully performed all of its obligations under the *Indemnity Agreement*.

50.     The *Indemnity Agreement* obligates the INDEMNITORS to collateralize GCNA with an "*amount sufficient to discharge any claim made against Surety on any bond*," which amount shall be equal to "*such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss*."

51.     The INDEMNITORS have breached their obligations under the Indemnity Agreement by failing and/or refusing to provide such collateral is GCNA, in its sole judgment, deems sufficient to protect it from loss under the *Bonds*.

52.     The INDEMNITORS' failure to collateralize GCNA in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which GCNA has no adequate remedy at law, a fact which the INDEMNITORS have specifically acknowledged in agreeing that "*their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law.*"

53.     GCNA is fearful and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to any claimants against the *Bonds* for which GCNA may be liable, or that the INDEMNITORS, based upon their refusal to

-11-

CASE NO.: _____

collateralize GCNA in accordance with the *Indemnity Agreement*, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal such assets.

54.     In the absence of the equitable relief sought herein, GCNA will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the *Bonds* without being adequately secured by the INDEMNITORS for its obligations under the *Bonds*.

55.     By virtue of the rights under the *Indemnity Agreement*, GCNA is entitled to have the INDEMNITORS provide collateralize under the *Indemnity Agreement* to cover the actual and/or anticipated losses and claims under the *Bonds*.

56.     Unless the relief in the nature herein requested or its equivalent is granted, GCNA's equitable rights will be forever lost, depriving GCNA of adequate security for its obligations under the *Bonds*.   Further, unless the equitable relief requested below is granted, INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to GCNA.

57.     GCNA is entitled to equitable relief for specific performance of the INDEMNITORS' obligation to collateralize GCNA under the *Indemnity Agreement*, a fact which the INDEMNITORS have specifically acknowledged in agreeing that "*Surety is entitled to injunctive relief for specific enforcement of the foregoing provision*."

58.     GCNA has a high probability of success on the merits, as the INDEMNITORS' failure to satisfy the claims against the *Bonds* coupled with the pending allegations on the various Projects, have clearly triggered the INDEMNITORS' obligations under the *Indemnity Agreement*. GCNA has duly performed its duties, obligations and conditions under the *Indemnity Agreement* and the *Indemnity Agreement* provides for the relief sought in this count

59.     The threatened injury to GCNA outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter an *Order* in its favor and against the INDEMNITORS, granting GCNA specific performance/injunctive relief under the *Indemnity Agreement* by directing the INDEMNITORS to immediately provide to GCNA collateral security in such amount as GCNA, in its sole judgment, shall deem is sufficient to protect it from loss, awarding GCNA its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GCNA such other and further relief as this Court deems necessary, just and proper.

## COUNT II - BREACH OF CONTRACT: EXONERATION / COLLATERALIZATION (AGAINST INDEMNITORS)

60.     GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

61.     This is an action for exoneration and collateralization under the *Indemnity Agreement*.

62.     There exists a valid and fully enforceable contract between GCNA and INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

63.     GCNA has fully performed all of its obligations under the *Indemnity Agreement*.

64.     Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS agreed to immediately provide GCNA with sufficient funds to cover any actual and/or potential losses under the *Bonds*.

CASE NO.: _____

65.    By virtue of the rights of exoneration and collateralization set forth in the *Indemnity Agreement*, GCNA is entitled to the INDEMNITORS' assets to protect and/or from any and all losses and/or expenses which may be incurred in connection with GCNA's issuance of the *Bonds*.

66.    The INDEMNITORS are obligated to GCNA under the *Indemnity Agreement* for any and all additional indebtedness under the *Indemnity Agreement* which may continue to accrue, including but not limited to the expenditure of funds paid in investigation, resolution, and/or satisfaction of any liability which may ultimately be determined in favor of any existing claimant.

67.    As a result of GCNA's potential liability arising from the various pending claims against the *Bonds*, GCNA has made demand upon the INDEMNITORS under the *Indemnity Agreement* to post satisfactory collateral with GCNA to cover GCNA's potential losses and expenses.

68.    Despite such demands, the INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to post satisfactory collateral upon demand by GCNA.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, requiring the INDEMNITORS to exonerate GCNA under the *Indemnity Agreement* as follows: (a) procure the discharge and exoneration of GCNA under the *Bonds* and from any and all liability by reason thereof; (b) post sufficient collateral to exonerate GCNA for any sums that GCNA may incur and/or be required to pay for losses and/or expenses incurred as a result of having issued the *Bonds*; (c) pay and reimburse GCNA for its attorneys' fees and costs incurred in prosecution of the instant action; and (d) award GCNA such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT III – BREACH OF CONTRACT:
## INDEMNIFICIATION (AGAINST INDEMNITORS)

69.     GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

70.     This is an action for damages seeking relief at law under the *Indemnity Agreement.*

71.     There exists a valid and fully enforceable contract between GCNA and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

72.     GCNA has fully performed all of its obligations under the *Indemnity Agreement*.

73.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify GCNA.

74.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, GCNA has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid in investigating, addressing and resolving the various claims against the *Bonds*, and the fees and costs incurred in the prosecution of the instant action.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding GCNA its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding GCNA its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GCNA such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT IV – COMMON LAW INDEMNIFICATION
## (AGAINST MIK)

75.    GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

76.    This is an action for damages seeking relief at common law and in equity.

77.    There exists a special relationship between GCNA, as surety, and MIK, as principal, arising out of the parties' business dealings related to the various Projects and *Bonds*, such that it is appropriate for common law indemnification to exist.

78.    GCNA has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Projects and the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

79.    Any and all losses and expenses incurred to date as a result of the special relationship between GCNA and MIK arise only out of the vicarious, constructive, derivative or technical liability imposed upon GCNA as a result of the fault and/or wrongdoing of MIK.

80.    At common law, MIK is responsible to GCNA for any and all losses and expenses incurred or to be incurred.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against MIK, awarding GCNA its general, special and consequential damages which have been and/or will be incurred as a result of GCNA's payment of losses and expenses for which MIK should be liable under the legal theory of common law indemnity, awarding GCNA its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding GCNA such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT V - COMMON LAW EXONERATION
### (<u>AGAINST MIK</u>)

81.     GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

82.     This is an action for exoneration at common law and in equity.

83.     There exists a special relationship between GCNA, as surety, and MIK, as principal, arising out of the parties' business dealings related to the various Projects and *Bonds*, such that it is appropriate for common law exoneration to exist.

84.     GCNA has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Projects and *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

85.     MIK is obligated to GCNA under the *Indemnity Agreement* for any and all additional indebtedness arising out of the special relationship which may continue to accrue, including but not limited to the expenditure of funds paid in investigation, resolution, and/or satisfaction of any liability which may ultimately be determined in favor of any of the claimants.

86.     Any and all losses and expenses which may be incurred by GCNA as a result of the outstanding pending claims against the *Bonds,* arise only out of the vicarious, constructive, derivative or technical liability imposed upon GCNA as a result of the fault and/or wrongdoing of MIK.

87.     At common law, MIK is responsible to GCNA for any and all losses and expenses incurred or to be incurred, and MIK is further obligated to immediately provide GCNA with sufficient funds as needed to satisfy GCNA existing and potential obligations under the *Bonds*.

CASE NO.: _____

88.     By virtue of the right of exoneration set forth at common law and in equity, GCNA is entitled to MIK's assets to protect GCNA from any and all losses and/or expenses which may be incurred in connection with GCNA's issuance of the *Bonds*.

89.     MIK has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with GCNA sufficient to cover the actual and/or potential losses arising as a result of the various outstanding claim against the *Bonds*. Unless the personal assets of MIK are collateralized, GCNA will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against MIK, requiring MIK to exonerate GCNA at common law and in equity as follows: (a) procure the discharge and exoneration of GCNA under the *Bonds* and from any and all liability by reason thereof; (b) post sufficient collateral to exonerate GCNA for any sums that GCNA may incur and/or be required to pay for losses and/or expenses incurred as a result of having issued the *Bonds*; (c) pay and reimburse GCNA for its attorneys' fees and costs incurred in prosecution of the instant action; and (d) award GCNA such other and further relief as this Court deems necessary, just and proper.

### COUNT VI – UNJUST ENRICHMENT
### (<u>AGAINST INDEMNITORS</u>)

90.     GCNA re-alleges and re-avers the allegations of paragraphs 1 through 45 hereof, as if fully set forth herein.

91.     This is an action for damages seeking relief at common law.

92.     GCNA has conferred a benefit upon the INDEMNITORS by issuing the *Bonds* on behalf of MIK and expending sums in connection with resolving the various claim against the *Bonds*.

CASE NO.: _____

93.     The INDEMNITORS voluntarily accepted, and continue to accept and retain the benefits conferred upon them by GCNA.

94.     The circumstances are such that it would be inequitable for the INDEMNITORS to retain the benefit conferred upon them by GCNA without reimbursing GCNA for the value thereof.

WHEREFORE, GCNA respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding GCNA its general, special and consequential damages which have been and/or will be incurred as a result of the unjust enrichment of the INDEMNITORS, awarding GCNA its attorneys; fees and costs incurred in prosecution of the instant action, and awarding GCNA such other and further relief as this Court deems necessary, just and proper.

DATED this 13TH day of April 2018.

**ETCHEVERRY HARRISON LLP**
Attorneys for GCNA
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
etcheverry@etchlaw.com
geller@etchlaw.com
albert@etchlaw.com
service@etchlaw.com

By: /s/ *Edward Etcheverry*
Edward Etcheverry, Fla. Bar No. 856517
Jeffrey S. Geller, Fla. Bar No. 63721